IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LARRY G. PHILPOT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-339-RP |
| | § | |
| WOS, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are cross motions for summary judgment filed by Plaintiff Larry G. Philpot ("Philpot"), (Dkt. 26), and Defendant WOS, Inc. ("WOS"), (Dkt. 25). Having considered the parties' motions and the responsive briefing, the record, and the relevant law, the Court finds that each motion should be granted in part and denied in part.

## I. BACKGROUND

Philpot is a freelance photographer who mostly photographs musicians at live performances. (Compl., Dkt. 1, at 4). At issue in this case are two of his photographs: one of Lukas Nelson and another of Kenny Chesney. (Philpot Decl., Dkt. 26-1, at 3–4).[1] WOS is a media company that operates a website called Wide Open Country ("WOC"), which publishes news, entertainment, and lifestyle content related to country music. (WOS Mot. Summ. J., Dkt. 25, at 4). In 2015, WOS created and published two articles on WOC featuring Philpot's Nelson and Chesney photos. (*Id.* at 5–7). Philpot alleges that WOS published the photos without proper attribution and therefore violated the Creative Commons License under which he makes the photos available. (Compl., Dkt. 1, at 6–10). He also alleges that WOS scrubbed the metadata from the photos before publishing them. (*Id.* at 13–14). He now sues WOS for copyright infringement in violation of 17 U.S.C. § 501

---

[1] Record citations for the summary judgment exhibits filed at Dkts. 25-1 and 26-1 are to the page of the PDF file that combines all of the parties' exhibits.

and for removing copyright management information in violation of 17 U.S.C. § 1202(b). (*Id.* at 11–14). WOS seeks summary judgment on each of Philpot's claims, (Dkt. 25), and Philpot seeks partial summary judgment on each of WOS's defenses, (Dkt. 26).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). The Court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor, *Rosado v. Deters*, 5 F.3d 119, 122–23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). That said, when one party's version of the facts "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record

and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 175 (5th Cir. 2000). Cross-motions for summary judgment "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

### III. DISCUSSION

#### A. Summary Judgment Evidence

Philpot has been a professional photographer, in his view, since 2008. (Philpot Dep., Dkt. 25-1, at 179). He has no training in photography and has never been employed full-time as a photographer; he works as a freelancer. (*Id.*; *id.* at 200; Compl., Dkt. 1, at 1, 4). He is formally affiliated with "OnStage Magazine," a company he created to gain access to bigger events, but which does not actually produce magazines or generate advertising revenue. (Philpot Dep., Dkt. 25-1, at 183–84). He has never been hired to photograph a concert or other event. (*Id.* at 182). He is compensated for his work mostly in concert tickets, food, and drinks. (*Id.* at 180, 190–91). Pressed to identify monetary compensation for his work, Philpot testified that once he did a shoot for a hidden-camera show and that he once earned $0.88 for an image of Prince that he took at a concert he paid $2,000 to attend. (*Id.* at 189–90). He sells prints of his photos but has made "not very much" money—possibly less than $100 total—doing so. (*Id.* at 194). He loses money on his photography work almost every year. (*Id.* at 213–14).

Philpot took the Nelson photo in 2009 and the Chesney photo in 2013. (Philpot Decl., Dkt. 26-1, at 3–4). He registered each one with the U.S. Copyright Office the year they were taken, (Certificates of Registration, Dkt. 26-1, at 11, 16), and made both publicly available for free by uploading them to Wikimedia Commons under a Creative Commons License ("CCL"). (Philpot Decl., Dkt. 26-1, at 5–6).[2] That license conditions use of the images on attribution—provided "in any reasonable manner"—that includes the author's name, the title of the work, and "to the extent reasonably practicable," the work's "Uniform Resource Identifier" ("URI"). (CCL, Dkt. 26-1, at 21–22; *see also* Wikimedia License Summaries, Dkt. 26-1, at 28, 33). On the Wikimedia page for both photos, Philpot states that attribution should be made to "Larry Philpot of www.soundstagephotography.com" or "Larry Philpot, www.soundstagephotography.com." (Wikimedia License Summaries, Dkt. 26-1, at 27, 33). The Chesney photo's Wikimedia page also names the author as "Nightshooter"—Philpot's username—next to his attribution line. (*Id.* at 27). The CCL for the Chesney and Nelson photos terminates automatically if the licensee breaches any term of the license. (CCL, Dkt. 26-1, at 22).

WOS launched WOC in 2015. (O'Dwyer Aff., Dkt. 25-1, at 59). Since then, it has been run by a full-time staff of four and relies mostly on freelancers to create content. (*Id.*). WOS is no stranger to CCLs—it often uses images licensed under CCLs and has a guide instructing freelance writers to "familiarize yourself with the different types of CC licenses." (O'Dwyer Dep., Dkt. 25-1, at 106–07; O'Dwyer Aff., Dkt. 25-1, at 59). In that guide, WOS tells freelancers that CCL-licensed images should have a source page with information about the license and that they must attribute the image as instructed by the author. (O'Dwyer Dep., Dkt. 25-1, at 107).

---

[2] The two photos currently appear as the main images of the performers on their Wikipedia.com pages. *See* WIKIPEDIA.COM, http://en.wikipedia.org/wiki/Kenny_Chesney (last visited Apr. 15, 2019); *id.*, http://en.wikipedia.org/wiki/Lukas_Nelson_%26_Promise_of_the_Real (last visited Apr. 15, 2019).

In 2015, WOS created and published an article titled "Father of Two Beaten to Death After Kenny Chesney Concert." (Chesney Article, Dkt. 25-1, at 37). Underneath the headline is a photo of the man and his children alongside Philpot's Chesney photo. (*Id.*). Under the photos is an attribution line that reads: "Twitter/AlexRozierK5, Wikimedia Commons/Nightshooter." (*Id.*). That same year, WOS created and published an article titled "See Willie and Merle's Sons Cover of 'Seven Spanish Angels.'" (Nelson Article, Dkt. 25-1, at 42). Underneath the headline is Philpot's Nelson photo alongside a photo of Ben Haggard. (*Id.*). Underneath the photos is an attribution line that reads: "Wikimedia Commons, Facebook/Ben Haggard." (*Id.*).

Several years ago, Philpot began using software to search the Internet for infringing uses of his copyrights because he "wasn't making any money at all" on his photography. (Philpot Dep., Dkt. 26-1, at 197–99). Since then, Philpot guesses that he has probably filed over 50 copyright infringement lawsuits. (*Id.* at 207).[3] On January 9, 2018, counsel for Philpot sent WOS a cease-and-desist letter claiming that they had "just learned" about WOS's infringing use of the Nelson photo and asking them to stop displaying it. (Bowen Letter, Dkt. 25-1, at 137). WOS was not notified that it was infringing Philpot's rights to the Chesney image until being served with the complaint. (O'Dwyer Aff., Dkt. 25-1, at 60). After receiving the letter, WOS changed the attribution line for the Nelson photo from "Wikimedia Commons" to "Nightshooter," Philpot's Wikimedia username. (O'Dwyer Dep., Dkt. 25-1, at 76). Philpot then filed this action, in which he seeks $150,000 in damages for each photo. (Compl., Dkt. 1, at 12).

---

[3] A brief search returns a number of Philpot's other cases, some of which involve the works at issue in this case. *See Philpot v. New Orleans Tourism Mktg. Corp.*, CV 18-9087, 2019 WL 142295, at *5 (E.D. La. Jan. 9, 2019); *Philpot v. Media Research Ctr. Inc.*, 279 F. Supp. 3d 708 (E.D. Va. 2018); *Philpot v. L.M. Commc'ns II of S.C., Inc.*, 343 F. Supp. 3d 694, 705 (E.D. Ky. 2018); *Philpot v. Dot Com Plus, LLC*, 1:14-CV-01980-TWP, 2015 WL 4742099, at *5 (S.D. Ind. Aug. 11, 2015); *Philpot v. Kos Media LLC*, 16CV01523ATBCM, 2017 WL 2271540, at *1 (S.D.N.Y. May 3, 2017); *Philpot v. Music Times LLC*, 16CV1277 (DLC), 2017 WL 1906902, at *2 (S.D.N.Y. May 9, 2017); *Philpot v. Celebrity Cafe.com, LLC*, 1:14-CV-01982-TWP, 2015 WL 5032144, at *6 (S.D. Ind. Aug. 25, 2015); *Philpot v. Toledo Radio, LLC*, 3:15 CV 1401, 2015 WL 12767968, at *2 (N.D. Ohio Oct. 14, 2015).

**B. WOS's Motion for Summary Judgment**

WOS seeks summary judgment on all of Philpot's claims: his set of copyright-infringement claims and his set of information-removal claims. (WOS Mot. Summ. J., Dkt. 25, at 8–18). Regarding the former, WOS does not dispute that its use of Philpot's photos infringed his copyrights in those images; it argues only that its use of those photos constitutes "fair use" under 17 U.S.C. § 107. (*Id.* at 13–18). Regarding the latter, WOS argues that there is not material issue of fact as to the intent elements of Philpot's claims. (*Id.* at 8–13). The Court will consider each set of claims separately.

1. Copyright Infringement—Fair Use

Section 106 of the Copyright Act confers a bundle of exclusive rights to the owner of a copyright, including the right "to publish, copy, and distribute the author's work." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985). But these rights are subject to "certain statutory exceptions," including the "privilege of other authors to make 'fair use' of an earlier author's work." *Id.* (citing 17 U.S.C. § 107). Section 107 was intended to codify the pre-existing judicial doctrine of fair use, which was "traditionally defined as 'a privilege in others than the owner of the copyright to use the copyrighted material in a reasonable manner without his consent.'" *Id.* at 549 (citing H. Ball, Law of Copyright and Literary Property 260 (1944)). Fair use is an affirmative defense for which WOS has the burden to establish that its otherwise infringing use of Philpot's photos is excused. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).

Section 107 of the Copyright Act permits the unauthorized use or reproduction of copyrighted work if it is "for purposes such as criticism, comment, news reporting, teaching . . . scholarship, or research." 17 U.S.C. § 107. Fair use is a mixed question of law and fact and requires a case-by-case determination on whether a particular use of a copyrighted work is fair. *Campbell*, 510 U.S. at 577; *Harper & Row*, 471 U.S. at 560. Making that determination requires consideration of

four factors: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect on the potential market for or value of the copyrighted work. 17 U.S.C. § 107. These factors are non-exclusive, *Harper & Row*, 471 U.S. at 560, and are to be "weighed together, in light of the purposes of copyright," *Campbell*, 510 U.S. at 578. Accordingly, some courts have described "the ultimate test of fair use" as "whether the copyright law's goal of promoting the Progress of Science and useful Arts would be better served by allowing the use than by preventing it." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006) (citation and internal quotation marks omitted).

### a. Factor One: The Purpose and Character of the Use

Under the first factor, courts consider the culpability of a defendant's conduct in acquiring or using a work, the extent to which such use is transformative, and whether such use is for commercial or noncommercial purposes. *See Harper & Row*, 471 U.S. at 562 ("Relevant to the character of the use is the propriety of the defendant's conduct.") (cleaned up); *id.* ("The fact that a publication was commercial as opposed to nonprofit is a separate factor that tends to weigh against a finding of fair use."); *Campbell*, 510 U.S. at 578–79 ("[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use."). Neither party argues that WOS's culpability is relevant here; each instead focuses on whether WOS used Philpot's photos for commercial purposes and whether its use is transformative. (WOS Mot. Summ. J., Dkt. 25, at 14–15; Resp. WOS Mot. Summ. J., Dkt. 29, at 6–10).

There is no genuine dispute that WOS's use of Philpot's photos is commercial. WOS is a for-profit business that earns advertising revenue based on pageviews. (O'Dwyer Dep., Dkt. 26-1, at 72–73, 82). WOS used Philpot's photos to drive traffic to its articles about Chesney and Nelson; that traffic earned the company revenue. (WOS Interrog. Resp., Dkt. 26-1, at 60–61 (admitting that

WOS earned $6.41 from the Chesney article and $119.83 from the Nelson article)). Although WOS downplays its uses as "nominally commercial" because the Chesney article brought in only $6.41, the question is whether WOS "st[ood] to profit from exploitation of the copyrighted material without paying the customary price"—here, attribution—and not whether WOS was especially successful at profiting from its exploitation.[4] This subfactor tends to weigh against a finding of fair use but is far from dispositive. *Campbell*, 510 U.S. at 584–85.

As for whether WOS's use is transformative, the question is "whether the new work merely supersedes the objects of the original creation, . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.* at 579 (cleaned up). The importance of this subfactor is determined on a sliding scale: "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id.*

WOS argues that its use is transformative because Philpot's purpose for his photos "is to depict artists in concert," while WOS used the photos for "news commentary about the murder of the father of two" (the Chesney photo) and for "commentary unrelated to the image's subject" (the Nelson photo). (WOS Mot. Summ. J., Dkt. 25, at 14, 17). Neither article concerned the performance depicted in Philpot's photos, and WOS argues that it could have interchangeably used any other photo of Chesney or Nelson for the articles. (*Id.*). Philpot responds that there is "no transformation of any kind" because WOS and Philpot both used the photos for the same purpose: to identify Chesney and Nelson. (Resp. WOS Mot. Summ. J., Dkt. 29, at 8). This disagreement about how to characterize Philpot's purpose and WOS's is a fact issue for a jury. For purposes of deciding WOS's motion, the Court finds that a reasonable jury could conclude that both parties used the Chesney and Nelson photos for the same purpose. When, as here, a work is reproduced exactly for the same

---

[4] Tellingly, WOS points to no authority for the proposition that a commercially unsuccessful use weighs less in favor of fair use than a commercially successful use. (*See* WOS Mot. Summ. J., Dkt. 25, at 15).

purpose, the use is not transformative. *See Balsley v. LFP, Inc.*, 691 F.3d 747, 759 (6th Cir. 2012) (quoting *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818–19 (9th Cir. 2003)) ("Where 'an original work is merely retransmitted in a different medium' or where the 'resulting use of the copyrighted work . . . [is] the same as the original use,' the new work is not 'transformative.'"). Viewing the facts in the light most favorable to Philpot, this factor weighs in his favor.

### b. Factor Two: The Nature of the Copyrighted Works

In considering nature of the copyrighted work, courts look at "the extent to which [the work] is a creative work enjoying broader copyright protection as opposed to a factual work requiring broader dissemination." *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000) (citing *Harper & Row*, 471 U.S. at 563–64).[5] A use is less likely to be deemed fair when the copyrighted work is a creative product. *Stewart v. Abend*, 495 U.S. 207, 237 (1990); *see also Harper & Row*, 471 U.S. at 563 ("The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy."). Although photographs have "varying degrees of creativity," *Balsley*, 691 F.3d at 760, a reasonable jury could agree with Philpot that the Chesney and Nelson photos reflect Philpot's creative judgments about things like angle, framing, and timing. (Resp. WOS Mot. Summ. J., Dkt. 29, at 10–11). When creative judgments are apparent in a photograph—even if the purpose of the image is to document or convey factual information—courts tend to hold that the work is creative in nature. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012); *Kelly*, 336 F.3d at 820. Viewing the facts in the light most favorable to Philpot, this factor weighs in his favor.

---

[5] Courts also consider whether a work was unpublished at the time of use, "in which case the right of first publication is implicated." *Nunez*, 235 F.3d at 23 (citing *Harper & Row*, 471 U.S. at 564). In such a case, "[t]he author's right to control the first public appearance of his expression weighs against such use of the work before its release." *Harper & Row*, 471 U.S. at 564. Because there is no question that Philpot's photos were published before WOS's use, the right of first publication is not implicated here.

*c. Factor Three: The Amount and Substantiality of the Portions Used*

In considering the amount and substantiality of the portions used, courts "examine both the quantitative and qualitative aspects of the portion of the copyrighted material taken." *Monge*, 688 F.3d at 1178 (citing *Campbell*, 510 U.S. at 586). "While wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use." *Kelly*, 336 F.3d at 820. That said, "the extent of permissible copying varies with the purpose and character of the use." *Bill Graham Archives*, 448 F.3d at 613 (citing *Campbell*, 510 U.S. at 586–87). So, for example, courts have concluded that wholesale copying does not necessarily weigh against finding fair use when doing so is necessary to make a fair use of the image. *See Kelly*, 336 F.3d at 821 (finding the wholesale replication of images used for a search engine database necessary for the purpose of recognition); *Nunez*, 235 F.3d at 24 (finding that, where a controversial photo was used in a story about the photo, to copy any less than the entire photo would have made the photo useless to the story).

WOS suggests in conclusory fashion that, like the thumbnail-image cases, its wholesale copying is justified as necessary to WOS's fair use. (WOS Mot. Summ. J., Dkt. 25, at 15–16 (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167 (9th Cir. 2007))). But WOS offers no reason why it needed to copy the entire images to convey to the reader that the story was about Chesney or Nelson. Unlike *Nunez*, WOS's articles were not *about* the photos themselves. 235 F.3d at 24. And unlike the thumbnail cases, it is not obvious why the entire image was necessary to accomplish the copier's aim. *See Perfect 10*, 508 F.3d at 1167. A reasonable jury could agree with Philpot that the wholesale copying of his photos is not necessary to make fair use of the images. (Resp. WOS Mot. Summ. J., Dkt. 29, at 11). Accordingly, this factor "militates against a finding of fair use." *Kelly*, 336 F.3d at 820; *Balsley*, 691 F.3d at 760.

*d. Factor Four: The Effect on the Works' Potential Market or Value*

Finally, courts consider "the effect of the use upon the potential market for or value of the copyrighted work." *Campbell*, 510 U.S. at 590 (quoting 17 U.S.C. § 107(4)). "This last factor is undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566. Analysis of this factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer," but also "whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (cleaned up). Put differently, the inquiry "must take account not only of harm to the original but also of harm to the market for derivative works." *Harper & Row*, 471 U.S. at 567.

This factor presumptively weighs in the plaintiff's favor if the use is commercial, because "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Balsley*, 691 F.3d at 760 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)). However, when the "second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred." *Campbell*, 510 U.S. at 591. Courts have described this factor as "concerned with secondary uses that, by offering a substitute for the original, usurp a market that properly belongs to the copyright holder." *Nunez*, 235 F.3d at 24 (quoting *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 110 (2d Cir. 1998)).

Because WOS's use of Philpot's photos is commercial, this factor presumptively weighs in Philpot's favor. *Balsley*, 691 F.3d at 760. And because, viewing the evidence in Philpot's favor, WOS's use is not transformative, the Court need not be skeptical of market substitution for the reasons described in *Campbell*. 510 U.S. at 591. Thus, at first glance, this factor would appear to weigh in Philpot's favor.

But a presumption is just that, and WOS has introduced significant, unrebutted evidence that there is no actual or potential market for Philpot's photos. Philpot makes these two photos available for free and makes little to no money licensing or selling prints of any of his photos, much less these two. (Philpot Dep., Dkt. 25-1, at 190–91; 206–07). He has never been hired to photograph a concert or other event. (*Id.* at 182). He is compensated for his work mostly in concert tickets, food, and drinks. (*Id.* at 180, 190–91). He loses money on his photography work almost every year. (*Id.* at 213–14). In fact, the principal way that Philpot appears to make money from his photography is settlement agreements in copyright lawsuits. (*Id.* at 190). On this record, even viewed in the light most favorable to Philpot, it is difficult to see how WOS's use has usurped the market for these two photos. *Nunez*, 235 F.3d at 24.

Philpot responds that his photographs are not offered for free; they are offered for the price of attribution, which has economic value as advertising for his work. (Resp. WOS Mot. Summ. J., Dkt. 298, at 15). This position is unpersuasive here. For one thing, Philpot admits that he can only recall a single contact because of attribution to one of his works, and he made no money from that contact because the image requested was available for free on Wikipedia. (Philpot Dep., Dkt. 25-1, at 205–06). Asked if he has "any reason to believe" that he would be contacted by anyone if his work were properly attributed, Philpot responded, "No." (*Id.* at 206). Moreover, this factor looks at the market for the original work and derivates from that work, not at the market for the plaintiff's work in general. *Campbell*, 510 U.S. at 590. Although the Court accepts that attribution might lead someone to purchase one of Philpot's works, he fails to explain how any amount of advertisement might lead to being paid for two works that he makes available for free.[6] So, while it is true that this

---

[6] At least one court has examined—in the context of open-source software licensing—the economic reasons an author might make a work available for free under a CCL. *Jacobsen v. Katzer*, 535 F.3d 1373, 1379 (Fed. Cir. 2008). Such reasons include, for example, that program creators might "generate market share for their programs by providing certain components free of charge." *Id.* Or, as another example, other programmers might improve the product. *Id.* Philpot does not explain why these possible economic motivations for public licenses in the software context might supply evidence that his public licenses create potential market value for his photographic works.

factor contemplates not only actual but also potential market damage, *id.*, there is no evidence that WOS's use will have any effect on the market for the Chesney or Nelson photos. Even viewing the evidence in the light most favorable to Philpot, WOS has overcome the presumption that this factor weighs against a finding of fair use. This factor—the most important of the four—weighs in WOS's favor.

### e. Weighing the Factors Together

When the evidence is viewed in Philpot's favor, three of the four factors tilt his direction. Meanwhile, the most important factor tilts against Philpot. Perhaps the final factor's weight is so great that WOS's use is fair, but that is not obviously the case—not so obvious, at any rate, that the Court can conclude that no reasonable jury could find to the contrary. WOS is not entitled to summary judgment on its fair use defense.

### 2. Removal of Copyright Management Information

In his second claim for relief, Philpot alleges that WOS removed copyright management information ("CMI") in violation of 17 U.S.C. § 1202(b) when it scrubbed the metadata[7] from the photos before publishing them. (Compl., Dkt. 1, at 13–14). Section 1202(b) provides that no person shall intentionally remove CMI or distribute works knowing that CMI has been removed, if that person knows that doing so will "induce, enable, facilitate, or conceal" copyright infringement. 17 U.S.C. § 1202(b). WOS seeks summary judgment on Philpot's CMI-removal claim, arguing that Philpot cannot establish either of the claim's two intent elements. (WOS Mot. Summ. J., Dkt. 25, at 8–13).

Proving a violation of Section 1202 requires proof of intent or actual (not constructive) knowledge: intentional removal or distribution with the knowledge of removal. 17 U.S.C. § 1202(b);

---

[7] The parties do not dispute that the photos' metadata, which identify Philpot as the author and copyright holder, constitutes copyright management information under the statute. (*See* Wikimedia Commons Pages, Dkt. 26-1, at 145, 149); *see also* 17 U.S.C. § 1202(c)(2), (3).

*Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 926 (6th Cir. 2003); *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 377 (S.D.N.Y. 2019). WOS's CEO, Denis O'Dwyer ("O'Dwyer"), testifies that WOS did not know that the photos contained metadata when it pulled the files off Wikimedia or when it posted the articles on WOC. (O'Dwyer Aff., Dkt. 25-1, at 60). He says that WOS does not think about what metadata might contain because it does not consider metadata to be useful. (*Id.*). WOS argues that it has met its burden to show the absence of a genuine fact issue concerning its intent or actual knowledge, shifting the summary judgment burden to Philpot to identify evidence in the record that would create a genuine issue of fact. (WOS Mot. Summ. J., Dkt. 25, at 8–11). The Court agrees, *see Matsushita*, 475 U.S. at 587, and finds that Philpot has not met his burden.

Philpot argues that because the photos' Wikimedia pages list the images' metadata, WOS must have known that the metadata contained CMI when it downloaded the photo from Wikimedia. (Resp. WOS Mot. Summ. J., Dkt. 29, at 3). For the Chesney photo, however, nobody from WOS ever visited the image's Wikimedia page; a freelance author downloaded the photo and added it to the article. (O'Dwyer Dep., Dkt. 26-1, at 80). Philpot did not depose the freelancer, serve her with discovery requests, or otherwise put any evidence in the record of either (a) how thoroughly she examined the page when downloading the image or (b) what she communicated to WOS even if she saw that the metadata contained CMI. There is therefore no evidence that the freelancer both knew that the metadata contained CMI and told the WOS editor who scrubbed the metadata and published the article that the metadata contained CMI. There is likewise no evidence that anyone from WOS ever visited the Chesney photo's Wikimedia page or otherwise examined the photo's metadata to see that it contained CMI before posting it to WOC.[8] There is therefore nothing from

---

[8] O'Dwyer admits that WOS removes metadata from images as a matter of regular practice, (O'Dwyer Dep., Dkt. 26-1, at 76, 82), because it "adds weight to the page" and increases load time, (*id.* at 90). But there is no evidence that WOS reviews metadata before removing it. If anything, the evidence suggests only that it does not, because the company is simply applying what O'Dwyer believes to be an industry-wide practice. (*Id.*). In general, O'Dwyer also believes that metadata is not "useful information" and that it "doesn't add any value." (*Id.*).

which a reasonable jury could conclude that WOS either intentionally removed CMI from the Chesney photo or that it published the photo knowing that CMI had been removed.

The Nelson photo, meanwhile, was downloaded from Wikimedia by a WOS employee: former editor Matt Alpert. (*Id.* at 81). But there is no evidence that Alpert viewed the entire Wikimedia Commons page before downloading the photo. Philpot did not depose Alpert, serve him with discovery requests, or otherwise put any evidence in the record of how thoroughly he examined the page when downloading the image. The only evidence in the record is the Wikimedia page itself. (Nelson Wikimedia Page, Dkt. 26-1, at 146–49). The metadata is listed at the bottom of that page, beneath information about the image—such as its source, author, and attribution—a summary of the CCL, and file history. (*Id.*). There is no evidence that Alpert scrolled to the bottom of the page. Indeed, what little evidence exists in the record points to the opposite conclusion: the photo is credited to "Wikimedia Commons" rather than according to the attribution information listed in the middle of the page. (*Id.* at 43). Having failed to produce any evidence about what Alpert—the only WOS employee who actually visited the Nelson photo's Wikimedia page—knew, Philpot cannot rebut WOS's evidence that it knew nothing about the images' metadata simply by pointing to the page itself. That page, without more, is not evidence from which a reasonable jury can infer that Alpert knew the full page's contents. WOS is entitled to summary judgment on Philpot's CMI-removal claims.

## C. Philpot's Motion for Summary Judgment

In its answer, WOS asserts fifteen affirmative defenses. (Answer, Dkt. 7, at 7–9). Philpot seeks summary judgment on each defense. (Philpot Mot. Summ. J., Dkt. 26, at 1). In its response, WOS argues that (a) it is entitled to summary judgment on its fair-use defense and that (b) genuine

issues of material fact exist concerning its defenses of (1) license, (2) non-infringement,[9] (3) unclean hands, (4) copyright misuse, (5) invalid copyright, (6) no damages,[10] (7) innocent intent, and (8) third-party acts.[11] (Resp. Philpot Mot. Summ. J., Dkt. 28, at 4–16).[12] The Court will examine each defense in turn, beginning with fair use.

### 1. Fair Use

Philpot believes that not only is WOS not entitled to summary judgment on its fair-use defense, but that he is. (Philpot Mot. Summ. J., Dkt. 26, at 6–9). Once again, the Court must examine the Section 107 factors, this time viewing the facts in the light most favorable to WOS.

#### a. Factor One: The Purpose and Character of the Use

As above, there is no question that WOS's use is commercial.[13] But viewing the evidence in the most favorable light to WOS, a reasonable jury could conclude that the parties used the works with different purposes because it could agree that WOS used the photos in support of "news

---

[9] Philpot argues that "non-infringement" is not an affirmative defense but rather a negative defense to the elements of his copyright infringement claim. (Philpot Mot. Summ. J., Dkt. 26, at 10–11). WOS offers no response. (Resp. Philpot Mot. Summ. J., Dkt. 28, at 7). The Court agrees with Philpot that WOS need not shoulder the burden to prove non-infringement and need simply convince the ultimate factfinder the Philpot has not met his burden to prove infringement.

[10] As with non-infringement, Philpot argues that "no damages" is a negative defense rather than an affirmative defense. (Philpot Mot. Summ. J., Dkt. 26, at 17). WOS argues that there is a "clear issue of material fact" as to whether Philpot suffered damages but does not explain how "no damages" is an affirmative defense on which it has the burden of proof. (Resp. Philpot Mot. Summ. J., Dkt. 28, at 13). As with non-infringement, the Court agrees with Philpot that WOS need not shoulder the burden to prove the absence of actual damages and need simply convince the ultimate factfinder the Philpot has not met his burden to prove actual damages.

[11] WOS argues it should be allowed to argue at trial that Philpot cannot recover for secondary copyright infringement because he only pleaded a claim for direct infringement. (Resp. Philpot Mot. Summ. J., Dkt. 28, at 15). WOS believes that there is evidence that Facebook, not WOS, published the two articles on the WOC Facebook page, and that therefore it should be permitted to argue that WOS is not liable for direct infringement. (Id.). Philpot responds that "acts of third parties" is a negative rather than an affirmative defense. (Reply Philpot Mot. Summ. J., Dkt. 32, at 10). WOS points to no authority for the proposition that it has the burden to prove that a third party copied the work, and the Court can find none. As Philpot observes, WOS may argue that secondary copyright infringement, not direct infringement, applies to this case at trial.

[12] For the affirmative defenses not contested by WOS, the Court finds that Philpot has met his burden to establish the absence of a genuine issue of material fact and WOS failed to meet its responsive burden to identify such issues. (See Reply Philpot Mot. Summ. J., Dkt. 32, at 1). To the extent that these defenses are in fact affirmative defenses, Philpot is entitled to summary judgment as to them.

[13] WOS again argues that its commercial use was "*de minimis*" because it earned less than $200 in revenue from the two articles. (Resp. Philpot Mot. Summ. J., Dkt. 28, at 4–5). As before, WOS cites no authority for the proposition that a commercially unsuccessful use is more likely to be a fair use than a commercially successful use. (See id.).

commentary" while Philpot's purpose was merely "to depict the artists in concert." (WOS Mot. Summ. J., Dkt. 25, at 14). Upon making such a finding, the jury could conclude that WOS's use was transformative, because its object did not "merely supersede[ ]" the object of Philpot's original images and added "something new" by way of a "further purpose" for the photos. *Campbell*, 510 U.S. at 579.

That said, the Court agrees with those courts that have held that when an infringer simply reproduces a work in a new context, the use is "at best minimally transformative." *Monge*, 688 F.3d at 1176. In *Monge*, a magazine published a celebrity couple's private wedding photos for an article exposing their secret marriage. *Id.* at 1168–69. The court agreed that the magazine's purpose differed from the couple's, *id.* 1176, but noted that the article accompanying the photos was not about the photos (unlike the photos in *Nunez*) and that the magazine could have reported on its subject without the photos. *Id.* at 1175–76. Observing that "difference in purpose is not quite the same thing as transformation," the court then found that the magazine "left the inherent character of the images unchanged." *Id.* at 1176. Such use—"wholesale copying sprinkled with written commentary"—was held to be "at best minimally transformative." *Id.* So too here, where even in the best light for WOS, it fully copied Philpot's photos to draw attention to articles that had nothing to do with the photos themselves. A reasonable factfinder could conclude that this factor is either neutral or tilts slightly in either direction, depending on how much weight it gives WOS's minimally transformative use.

### b. Factor Two: The Nature of the Copyrighted Works

As discussed above, photographs have "varying degrees of creativity." *Balsley*, 691 F.3d at 760. Presented with photographs that are "not designed primarily to express [the photographer's] ideas, emotions, or feelings," courts have found that the impact on the fair-use inquiry to be neutral. *Nunez*, 235 F.3d at 23. This is a similar situation: Philpot admits that he took the photos to

"identify" Chesney and Nelson rather than to express his own viewpoint or feelings through the images. (Philpot Decl., Dkt. 26-1, at 4). Nevertheless, courts have also held that "[p]hotographs that are meant to be viewed by the public for informative and aesthetic purposes . . . are generally creative in nature." *Kelly*, 336 F.3d at 820. Notwithstanding Philpot's emphasis on the creative decisions he made crafting these two photos, (Philpot Mot. Summ. J., Dkt. 26, at 8), a reasonable jury could find that these photos—taken with an admittedly non-artistic aim (to identify)—are so factual as to be considered "marginally creative," *Monge*, 688 F.3d at 1178. Upon making such a finding, a reasonable jury could agree with WOS that the factor is neutral. *Balsley*, 691 F.3d at 760.

### c. Factor Three: The Amount and Substantiality of the Portions Used

Even viewed in the light most favorable to WOS, there is no evidence that it was necessary for WOS to wholesale copy Philpot's photos. (*See* Reply Philpot Mot. Summ. J., Dkt. 32, at 2). Accordingly, this factor this factor "militates against a finding of fair use." *Id.* at 820; *Balsley*, 691 F.3d at 760.

### d. Factor Four: The Effect on the Works' Potential Market or Value

The final factor weighs in favor of finding fair use even when the evidence is viewed in the light most favorable to Philpot. *See supra* at 11–13. All the more so in the opposite light: a reasonable jury could conclude that there is no market for the Chesney and Nelson photos and that WOS's failure to properly attribute those photos has not damaged any potential market for those photos. This factor weighs heavily in WOS's favor.

### e. Weighing the Factors Together

When the evidence is viewed in WOS's favor, the most important factor tilts substantially toward a finding of fair use and two factors are neutral. A reasonable jury could conclude that notwithstanding its wholesale copying, WOS's minimally transformative use was fair given that it

had no effect on the market value of two marginally creative photos. Thus, Philpot is not entitled to summary judgment on WOS's fair use defense.

## 2. License

Even when a plaintiff can establish copyright infringement, "the existence of a license authorizing the use of copyrighted material is an affirmative defense to an allegation of infringement." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). However, a license only shields a user from liability if the user acts within the permitted scope of the license. *Stross v. Redfin Corp.*, 730 F. App'x. 198, 203 (5th Cir. 2018); *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 954 (9th Cir. 2018), *rev'd in part on other grounds*, 139 S. Ct. 873 (2019). WOS asserts this defense, arguing that there is a genuine issue of material fact as to whether its use of Philpot's photos complied with the CCL covering those photos. (Answer, Dkt. 7, at 8; Resp. Philpot Mot. Summ. J., Dkt. 28, at 7). There is no dispute that the photos are covered by licenses, only whether WOS's use fell within the permitted scope of the licenses.[14]

Philpot argues that WOS acted outside the scope of the photos' licenses—a standard version of one type of CCL—when it failed to properly attribute them. (Philpot Mot. Summ. J., Dkt. 26, at 9–10). According to Philpot, the CCL requires that a user attribute the works using (1) "the name of the Original Author (or pseudonym, if applicable)" and (2) "to the extent reasonably practical, the URI" specified by the author. (*Id.* at 10). On the Wikimedia page for both photos, Philpot states that attribution should be made to "Larry Philpot of www.soundstagephotography.com" or "Larry Philpot, www.soundstagephotography.com." (Wikimedia License Summaries, Dkt. 26-1, at 27, 33).

---

[14] Where, as here, the dispute concerns not the existence of the license but whether the user acted within the scope of the license, the Second Circuit places the burden on the copyright owner—to prove that the defendant's use was unauthorized. *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018). Although the Fifth Circuit has not explicitly adopted or rejected that approach, neither party has supplied a reason to depart from the expectation that a defendant should shoulder the burden of proving that its use was permitted, since license is an affirmative defense. *Baisden*, 693 F.3d at 499.

WOS included neither Philpot's name nor his website in its attribution line for either photo. (Chesney Article, Dkt. 25-1, at 37; Nelson Article, Dkt. 25-1, at 42).

Nonetheless, WOS believes that there is a fact issue because the CCL permits attribution "in any reasonable manner," and WOS "genuinely belie[ves]" that it originally hyperlinked the attribution text to the images' Wikimedia pages, which properly attributed the photos, because it is WOS's policy to hyperlink attribution lines. (Resp. Philpot Mot. Summ. J., Dkt. 28, at 7 (citing O'Dwyer Dep., Dkt. 25-1, at 75, 114–20, 129)). And while the CCL does require the attributive elements Philpot identifies—author name and URI—it also provides that "[t]he credit required . . . may be implemented in any reasonable manner." (CCL, Dkt. 26-1, at 21–22). On its website, Creative Commons—which created the standard license that Philpot used to license his works—tells users that "CC licenses have a flexible attribution requirement, so there is not necessarily one correct way to provide attribution." (CC FAQ Page, Dkt. 25-1, at 169). Among the proper methods of attribution is "providing a link to a place where the attribution information may be found." (*Id.*).

WOS has met its burden to create a genuine issue of material fact as to whether it acted within the scope of the CCL covering Philpot's photos. A reasonable jury could infer from O'Dwyer's testimony that the text was hyperlinked and from WOS's policy to hyperlink attribution text that the articles contained a hyperlink to the images' Wikimedia pages. Moreover, a reasonable jury could find that hyperlinking to Philpot's attribution information is a "reasonable manner" to provide credit under the CCL. Philpot is not entitled to summary judgment as to WOS's license defense.

### 3. Unclean Hands and Copyright Misuse

Copyright misuse is an affirmative defense that "bars a culpable plaintiff from prevailing on an action for the infringement of the misused copyright." *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 601 (5th Cir. 1996). A type of unclean-hands defense, copyright misuse "forbids the use of

the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999) (quoting *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 977 (4th Cir. 1990)). A plaintiff misuses a copyright when it attempts to use the copyright to obtain "monopoly power" over "property not covered by the . . . copyright." *Id.* at 793 (quoting *Lasercomb*, 911 F.2d at 976).

WOS's theory of copyright misuse is that Philpot is maintaining "what is effectively a coercive licensing practice." (Resp. Philpot Mot. Summ. J., Dkt. 28, at 8). According to WOS, Philpot is making monetarily worthless images available for free on Wikimedia Commons, combing the internet for attribution errors and then suing users to obtain settlement agreements as his only real source of business revenue. (*Id.* at 8–10). As evidence, WOS observes that Philpot is an untrained freelancer who admits that he has never been hired to photograph a concert, is rarely paid in money for his photography, sells very few prints of his work, and loses money on his photography work almost every year. (Philpot Dep., Dkt. 25-1, at 182–94, 213–14). He puts his work online for free because he allegedly values attribution. However, he also admits both (a) that he has no reason to believe that he would be contacted by anyone if his work were properly attributed, (*id.* at 206), and (b) that he began searching for CCL violations because he was not making money on his photography, (*id.* at 197–99). Pressed to identify income from his photography business, Philpot points to concert tickets, food and drink, one shoot two years ago—and settlement agreements. (*Id.* at 177, 190). A reasonable jury could infer from all of this evidence that Philpot's aggressive litigation practice is an abusive way to monetize works he cannot sell.

But even viewed in the light most favorable to WOS, this record does not support a finding of copyright misuse. Whatever WOS thinks of Philpot's litigation practices, he is in this case seeking to secure his monopoly rights over his own copyrighted works but is not seeking to extend that

monopoly power to any other property not covered by his copyrights. *See Alcatel*, 166 F.3d at 792–93. Philpot is entitled to summary judgment on this defense.[15]

<u>4. Invalid Copyright</u>

"To maintain a copyright infringement claim, the owner of the copyright must have registered it." *Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.*, 226 F.3d 387, 392 (5th Cir. 2000). Philpot undoubtedly registered both photos, (Certificates, Dkt. 26-1, at 113, 118), but WOS argues that there are genuine issues of material fact as to whether the Nelson registration is valid. (Resp. Philpot Mot. Summ. J., Dkt. 28, at 14). Specifically, WOS argues that Philpot erroneously registered the Nelson photo as an unpublished image in a set of unpublished works when in fact it had been published already. (*Id.*).

A copyright registration certificate is valid even if the certificate contains inaccurate information, unless the applicant knew that the information was inaccurate and the inaccuracy, if known to the Register of Copyrights, would have caused the Register to refuse registration. 17 U.S.C. § 411(b)(1). When Philpot first attempted to register the Nelson photo as part of a collection of 2009 works, the Copyright Office asked him whether every work in the collection had been published on June 5, 2009—the publication date listed in his application. (USCO Email, Dkt. 28-1, at 114). Philpot responded that he had published some images on his Flickr account but not others and that he did not know which were which. (*Id.*). After being told that published and unpublished works could not be registered together, Philpot responded that all of the photos were unpublished. (*Id.* at 112–13).

---

[15] Similarly, WOS points to no authority to support its theories that Philpot's alleged misrepresentations to the U.S. Copyright Office or the U.S. Internal Revenue Service are relevant to a copyright-misuse defense. (Resp. Philpot Mot. Summ. J., Dkt. 28, at 10–12). Like his litigation practices, Philpot's statements to the Copyright Office and the IRS appear unrelated to whether he is attempting to use his copyrights to obtain monopoly power over uncopyrighted property. *See Alcatel*, 166 F.3d at 792–93. Philpot has met his burden to show that this evidence fails to create a genuine issue of material fact, and WOS has not met its countervailing burden to explain why it does.

WOS's theory of invalid registration is that perhaps the Nelson photo was a published work when he sought registration, Philpot knew it was published, but he told the Copyright Office it was unpublished so that it could be registered with the unpublished collection. (Resp. Philpot Mot. Summ. J., Dkt. 28, at 14). "The Copyright Act defines 'publication' as 'the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending.'" *Rogers v. Better Bus. Bureau of Metro. Hous., Inc.*, 887 F. Supp. 2d 722, 730 (S.D. Tex. 2012) (quoting 17 U.S.C. § 101). So is offering copies to others for further distribution. *Id.* But "[a] public performance or display of a work does not of itself constitute publication." *Id.* Publishing images to a Flickr account is neither a sale or transfer of ownership nor a distribution to others for further publication. Accordingly, there is no genuine issue of material fact as to this defense, because no reasonable juror could conclude that Philpot knowingly included inaccurate information on his application. *See* 17 U.S.C. § 411(b)(1). Philpot is entitled to summary judgment as to this defense.

### 5. Innocent Intent

The Copyright Act provides that courts may reduce the total damages award if the violator proves that it "was not aware and had no reason to believe that its acts constituted a violation." 17 U.S.C.A. § 1203(b)(5). WOS asserts this defense with respect to Philpot's CMI-removal claims. (Resp. Philpot Mot. Summ. J., Dkt. 28, at 15). Because the Court by this order grants summary judgment in favor of WOS as to those claims, there will be no associated damages to reduce. This issue is therefore moot.

Additionally, the Copyright Act provides that courts may reduce the award of statutory damages to $200 when the infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2). WOS argues that even if Philpot proves that WOS infringed his copyrights, there are genuine issues of fact as to whether it did so intentionally or knowingly. (Resp. Philpot Mot. Summ. J., Dkt. 28, at 14). WOS argues that it is a

small company that relies on freelancers to produce a high volume of content, that it instructs those freelancers to be mindful of copyrights and CCLs, and that it believed the hyperlinks to the images' Wikimedia pages complied with the license's attribution requirements. (*Id.*). Viewed in the light most favorable to WOS, this evidence could lead a reasonable jury to agree that it had no reason to believe that it was infringing Philpot's copyrights. Philpot is therefore not entitled to summary judgment as to this defense.

## IV. CONCLUSION

For the reasons given in this order, **IT IS ORDERED** that WOS's Motion for Summary Judgment, (Dkt. 25), is **GRANTED IN PART AND DENIED IN PART**. Specifically, summary judgment is granted in favor of WOS as to Philpot's CMI-removal claims. All other relief sought in WOS's motion is denied.

**IT IS FURTHER ORDERED** that Philpot's Motion for Partial Summary Judgment, (Dkt. 26), is **GRANTED IN PART AND DENIED IN PART**. Specifically, summary judgment is granted in favor of Philpot as to WOS's copyright-misuse and invalid-copyright defenses. Likewise, summary judgment is granted in favor of Philpot as to the affirmative defenses that WOS failed to address in its response to Philpot's motion. All other relief sought in Philpot's motion is denied.

**SIGNED** on April 22, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE